UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 7/27/2026

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ZIHAN HOLDING LLC and GRILL MASTER 001 INC.,

Plaintiffs,

-against-

26-cv-3264 (LAK)

ELI GARDEN FUSION, LLC and LEI ZHU,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS OR TRANSFER**

Appearances:

Sarah T. Haddad
PENDULUM LEGAL P.C.
*Attorney for Plaintiffs*

Frederic R. Abramson
LAW OFFICE OF FREDERIC R. ABRAMSON

Kelvin J. Lo
LO & LO LLP

*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

This action fundamentally is a dispute between a small group of Chinese restaurants based in the New York City area (but ambitious to expand in numbers and geographic presence) and another Chinese food business located in Irvine, California, primarily over defendants' alleged

infringement of plaintiffs' trademarks. The matter is before the Court on defendants' motion to dismiss for want of personal jurisdiction, improper venue, and insufficiency of process or service of process or, alternatively, to transfer the action to the Central District of California.

***Facts***

Plaintiffs operate their five restaurants under the registered trademark JIANG NAN and use also the registered trademark JIANG NAN NEW YORK CHINESE FUSION.[1] They have aspired since 2019 to expand to forty dining locations.[2] And they allege that they extensively have distributed their products and services throughout the United States under the two marks since at least as early as 2019.[3]

Beginning in or about May 2025, plaintiffs and defendants began attempts to form a joint venture to own and operate a restaurant in California.[4] Ultimately, plaintiffs allege, they never reached agreement.[5] Over a period of months, however, plaintiffs shipped to defendants and

---

1 Plaintiff Grill Master 001 Inc. owns the registrations. Compl. (Dkt 1) ¶ 11. Plaintiff Zihan Holding LLC carries on the restaurant business and a central kitchen, *id.* ¶ 10, the precise function of which, given the relative geographic dispersion of its restaurants, is neither clear nor at this point material.

2 *Id.* ¶ 13.

3 *Id.* ¶ 16.

4 *Id.* ¶ 22.

5 *Id.* ¶¶ 23, 25-26, 28.

Defendants, who have not answered the complaint yet, have not taken a position on this contention.

invoiced them for goods and promotional or marketing materials priced at more than $200,000 for which defendants allegedly have not paid in full.[6]

At some point – which curiously is not specified in the complaint – defendants allegedly began using plaintiffs' registered marks in connection with their "goods and services" in Irvine, California, apparently at a restaurant called "JIANG NAN @Irvine."[7] While it is not entirely clear, defendants perhaps do not dispute that there was at least some display of the plaintiffs' marks in connection with defendants' Irvine restaurant.[8] They claim also that plaintiffs' goods shipped to that restaurant were "defective or nonconforming."[9]

## *Discussion*

### *Dismissal Motion*

#### *Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction. The applicable standard depends upon the procedural context in which the jurisdictional challenge is raised.[10] Where no discovery has taken place, the plaintiff need make only a *prima facie* showing of jurisdiction "by pleading in good faith legally sufficient allegations

---

6 *Id.* ¶ 25.

7 *See id.* ¶¶ 23, 27-28.

8 *See* Zhu Decl. (Dkt 14-1) ¶¶ 3, 5-7.

9 *Id.* ¶ 8.

10 *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

of jurisdiction."[11] If conflicting affidavits or declarations have been submitted, a court is to resolve factual disputes in the plaintiff's favor.[12]

In this case, it is undisputed that defendants operate and reside in California, not New York. Plaintiffs allege that the parties failed to agree on any contract, so plaintiffs can assert no forum selection clause. Accordingly, personal jurisdiction depends upon whether plaintiffs have made out a sufficient showing under the only apparently relevant part of the New York long-arm statute, CPLR § 302(a)(1), which confers personal jurisdiction over causes of action arising from a defendant's "transact[ion of] any business within the state or contracts anywhere to supply goods or services in the state."

The complaint alleges that "Defendants purposefully transacted business with the Plaintiff's, Zihan Holding LLC's, central kitchen of its Jiang Nan restaurants located at 103 Bowery, New York, NY 10002."[13] While plaintiffs have submitted no evidence to support that allegation, defendants have submitted none to dispute it. So the Court is obliged to assume that defendants did transact business with plaintiffs' central kitchen on the Bowery. But what exactly does that mean and what does it have to do with the causes of action plaintiffs assert?

Of course, transaction of business "with" plaintiffs' central kitchen could mean a lot of things. It could mean that defendants were physically present there and, while present, ordered

---

11 *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball*, 902 F.2d at 197) (internal citation and quotations marks omitted); *accord In re Magnetic Audiotape Antitrust Litig*., 334 F.3d 204, 206 (2d Cir. 2003).

12 *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

13 Compl. (Dkt 1) ¶ 3.

and agreed to pay for the goods and services that plaintiffs shipped to them in California.[14] It could mean that whatever transpired occurred by telephone or email with defendants in California. No doubt there are other possible variations. But one thing it cannot mean is that the transaction of business with plaintiffs' central kitchen on the Bowery included any infringement of plaintiffs' marks, all of which occurred in connection with defendants' California business.[15] So plaintiffs' trademark infringement and unfair competition claims do not arise from any transaction of business in New York.[16]

There remain three questions – (1) whether defendants' conduct (if any) in relation to plaintiffs sending the goods and services for which part of the amount due allegedly remains unpaid constitutes the transaction of business in New York , (2) whether plaintiffs' unjust enrichment claim for $74,559, which allegedly remains unpaid for those goods and services arises out of that transaction of business in New York and, if yes to both of those questions, (3) whether that would establish a jurisdictional basis for considering plaintiffs' trademark infringement and unfair competition claims as well.

---

14

Defendants' reply memorandum states that defendants never visited New York. Defs.' Reply (Dkt. 24) ¶ 17. As defendants failed to submit any evidence in support of that proposition, however, plaintiffs are entitled to have their complaint's allegation that defendants transacted business with their central kitchen in New York taken as true on this motion and to the benefit of all inferences that reasonably may be drawn therefrom.

15

*See* Zhu Decl. (Dkt 14-1) ¶¶ 3, 5-7.

As Mr. Zhu's declaration is not contested by any evidence from plaintiffs, the Court accepts his assertions, which in any case are entirely logical.

16

Plaintiffs' reliance on *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004), for the proposition that out-of-state trademark infringement can subject a defendant to personal jurisdiction in New York is misplaced for the reasons set forth in defendants' reply memorandum. Defs.' Reply (Dkt 24) ¶¶ 16-17.

The answers to the first two questions, for the moment, must be resolved in plaintiffs' favor because the Court has a rather vague complaint before it and no evidence shedding light on what was done and by whom that resulted in the goods and services being sent to California. As it would not be unreasonable to infer from the meager record before the Court that, for example, the defendants visited New York, engaged in serious business discussions here, and arranged to have the goods and services sent to them in California, plaintiffs are entitled to the benefit of those inferences for want of more specific information. Whether plaintiffs can prove such facts of course remains to be seen.

So that brings the Court to the third question, which effectively involves the issue of whether the Court has pendent personal jurisdiction over the federal claims on the basis of what for present purposes appears to be long-arm jurisdiction over the claim for the unpaid balance allegedly due for the shipments of goods and services.

Wright and Miller summarize the doctrine of pendent personal jurisdiction as follows: "a district court has discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative fact as does a claim that is within the *in personam* jurisdiction power of the court."[17] Every circuit to have adopted the doctrine has described it similarly.[18] Under that formulation, this Court's personal jurisdiction over plaintiffs' state claims against defendants, assuming plaintiffs ultimately were to prevail on that issue, would permit the Court to determine the

---

17 4A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1069.7 (4th ed. 2026).

18 *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) (collecting cases).

federal claims – notwithstanding the unavailability under the relevant federal statute of nationwide service of process – as long as the state and the federal claims arise out of a common nucleus of operative fact.

To be sure, the parties have cited, and the Court has found, no Second Circuit case that squarely has held that there is pendent personal jurisdiction with respect to a federal claim based on the existence of state long-arm jurisdiction with respect to a state claim. Nevertheless, there is substantial authority elsewhere supporting such a conclusion as well as a district court case to that effect within this Circuit.[19] This Court agrees. And as there is a *prima facie* showing at this stage that the state claim here arises out of a common nucleus of operative fact as the federal claims, defendants' personal jurisdiction challenge fails, at least at this juncture.

***Venue and Other Grounds***

Section 1391(b)(2) of the Judicial Code provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[20] To ascertain whether venue is proper under that provision, "a court should identify . . . the acts or omissions that

---

19 *See Robinson Eng'g Co. Pension Plan and Tr. v. George*, 223 F.3d 445, 449 (7th Cir. 2000); *see also Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-cv-599, 2020 WL 5793297 (W.D.N.Y. Sept. 29, 2020); *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1253 (D. Colo. 2010) ("[S]everal courts have applied the concept of pendent personal jurisdiction where the additional claim is a federal claim."); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 556 (E.D. Va. 2009) (explaining that the "rationale for applying pendent personal jurisdiction to . . . state claims is no different than it would be for applying such jurisdiction to an additional federal claim").

20 28 U.S.C. § 1391(b)(2).

the plaintiff alleges give rise to [the] claims" and then "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed."[21]

In this case, there obviously were discussions or negotiations between the parties that occurred in New York or, even if defendants remained in California, involved participation of plaintiffs in this district. Over $200,000 worth of goods and services were shipped from New York to California. As the brevity of defendants' discussion of venue – one conclusory paragraph in their opening memorandum - effectively reveals, a substantial part of the events or omissions giving rise to the unjust enrichment claim occurred here. Thus, "significant events or omissions material to [that] claim" occurred here.[22] That is sufficient.

Defendants' assertion of insufficient process and service of process in their motion need not be addressed. They have submitted no evidence and made no argument in support. Those contentions have been abandoned.

***Transfer Motion***

Defendants alternatively seek transfer to the Central District of California under Section 1404(a) of the Judicial Code.[23]

Section 1404(a) permits transfer of an action for the convenience of parties and witnesses and in the interest of justice to any district in which it might have been brought. The factors informing consideration of such a motion are well established. "In considering whether a

---

21 *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

22 *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

23 28 U.S.C. § 1404(a).

transfer would be for the convenience of the parties and witnesses and in the interest of justice, '[t]he plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly.'"[24] Where, however, the plaintiff is an alien or a stranger to the forum with no connection to it, the degree of deference accorded to its choice is diminished.[25] Regardless of the degree of deference, considerations pertinent to assessing the balance of convenience "include (1) the convenience to the parties, (2) the convenience to the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the cost of obtaining willing witnesses, (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (7) the interests of justice."[26]

In this case, plaintiffs both are located in this district, and their existing restaurants all are in the New York City area. Accordingly, their choice of this forum is entitled "to substantial weight and will not be disturbed lightly." Other pertinent factors also weigh heavily in their favor. Defendants' contentions regarding the balance of the interests ultimately are not sufficiently persuasive to overcome plaintiffs' choice of this forum.

As an initial matter, with plaintiffs based in New York and defendants in California, the balance of convenience is much closer than defendants suggest. Litigating on the

---

24

*Schechter v. Tauck Tours, Inc.*, 17 F. Supp. 2d 255, 260 (S.D.N.Y. 1998) (LAK) (quoting *Thunder Island, Inc. v. A.G. Sport, Inc.*, No. 97-cv-4136 (LAK), 1997 WL 599414, at *1 (S.D.N.Y. Sept. 26, 1997)) (alteration in original).

25

*See Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 & n.3 (2d Cir. 2000); *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998); *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996); *Revson v. Claire's Stores, Inc.*, 120 F. Supp. 2d 322, 327 (S.D.N.Y. 2000) (LAK).

26

*Schechter,* 17 F. Supp. 2d at 260 (citing *Karriem v. Am. Kennel Club,* 949 F. Supp. 220, 221 (S.D.N.Y.1996) (LAK)).

coast opposite their homes is a necessary consequence of this case for one side or the other. Litigation of this case will be somewhat inconvenient for someone no matter which forum is chosen. If there is a difference, the fact that defendants are operating a single restaurant while plaintiffs are operating five suggests that Mr. Zhu, though styled as Eli Garden's chief executive officer, perhaps is more heavily involved in ever-changing day-to-day operations than are plaintiffs' principals, who oversee five different locations and a central kitchen. Plaintiffs' principals therefore perhaps have more managerial personnel to whom they could delegate were their presence briefly required in California. But this consideration, even if accurate, at best would weigh only slightly in defendants' favor, as they have failed to make an evidentiary record that gives it any strength.

Defendants have provided a list of potential employee witnesses from California and indicated areas of possible testimony. But most of the topics on which those witnesses are said to have knowledge – e.g., kitchen operations, food-quality standards, employee training, staff recruitment, and floor supervision – appear to be of little or no relevance to the case. Nevertheless, as plaintiffs have not submitted any evidence concerning witnesses – party-affiliated or independent – who would be significant and inconvenienced by a shift to California – this factor weighs modestly in defendants' favor.

Defendants' other arguments lack real substance. They argue that the availability of compulsory process in California favors them but have failed to identify a single non-party witness, let alone one whose testimony could not be obtained for a New York trial, whether by deposition, live electronic means, or in person. The location of other evidence, said to be heavily in California, also is inconsequential because anything of moment could be copied, photographed, or easily transported. The possible applicability of California law to some aspects of this case would give a

California district court no supervening advantage, as this Court frequently applies the law of other states and, indeed, at times foreign nations.

When all is said and done, there are some factors that weigh in defendants' favor, albeit not heavily. And they do not outweigh the substantial weight of the choice of this forum by local New York plaintiffs.

### *Conclusion*

For the foregoing reasons, defendants' motion to dismiss or, alternatively, transfer this action to the Central District of California (Dkt 14) is denied. In view of the facts that there has been no evidentiary hearing as to personal jurisdiction and that plaintiffs bear the ultimate burden of proving its existence, this decision is without prejudice to defendants reasserting the personal jurisdiction issue later in the litigation and, if need be, at any trial.

SO ORDERED.

Dated: July 27, 2026

Lewis A. Kaplan
United States District Judge